# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

| | | |
|---|---|---|
| AUGUSTUS INVICTUS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:21-cv-109-BJD-PRL |
| | ) | |
| THE STATE OF SOUTH CAROLINA; | ) | |
| GOVERNOR HENRY MCMASTER; | ) | |
| SIXTEENTH JUDICIAL CIRCUIT; CHIEF | ) | |
| ADMINISTRATIVE JUDGE WILLIAM A. | ) | |
| MCKINNON; YORK COUNTY | ) | |
| SOLICITOR'S OFFICE; SOLICITOR | ) | |
| KEVIN BRACKETT; and ASSISTANT | ) | |
| SOLICITOR JENNY E. DESCH, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## OBJECTION TO REPORT AND RECOMMENDATION

Plaintiff, Augustus Invictus, ("Plaintiff"), for the reasons stated herein, and pursuant to Fed. R. Civ. P. 72(b)(2), files these written objections to Magistrate Judge Philip R. Lammens' Report and Recommendation of 05 March 2021 (Doc. 5).

### I.   BACKGROUND

The Report and Recommendation by Magistrate Judge Lammens concerns the Application to Proceed in District Court without Prepaying Fees or Costs filed by Plaintiff on 22 February 2021. (Doc. 2). Judging by the Report, it is uncontested that Plaintiff is, in fact, indigent and qualified to proceed *in forma pauperis*. The issue is whether Plaintiff's Complaint is frivolous and should be dismissed, along with Plaintiff's motion to proceed *in forma pauperis*, without the Defendants being bothered to respond.

1

The Magistrate's summation of the facts, Doc. 5, pp.1-2, are correct, except that Plaintiff has sought a trial in South Carolina since his initial extradition to that State in January 2020; the trial was initially scheduled in late February 2020 for April 2020.

## II. LAW AND ARGUMENT

### A. Plaintiff's Complaint Complies with the Pleading Standards, and Any Alleged Defect Can Be Remedied by Amended Complaint.

Magistrate Lammens contends that Plaintiff's Complaint "appears to be a shotgun complaint," Doc. 5, p.3, because the Counts "fail to specify which facts are relevant to which causes of action." *Id.* at 4. Plaintiff notes that Fed. R. Civ. Pro. 8(a)(2) demands "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff incorporated the facts of Paragraphs 17 through 35 by reference in each Count rather than restating the facts, which would have made for a less short and less plain statement.

The Supreme Court has ruled that, "[b]y the plain terms of § 1983, two – and only two – allegations are required in order to state a cause of action under that statute." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The first is "that some person has deprived him of a federal right." *Id.* The second is that "he must allege that the person who has deprived him of that right acted under color of law." *Id.* (referencing *Monroe v. Pape*, 365 U.S. 167 (1961). Plaintiff's Complaint satisfied both of these terms in alleging the deprivation of his Fifth and Sixth Amendment rights and alleging that the Defendants were the ones who deprived him of those rights while acting under color of law.

If, in any case, Plaintiff's Complaint were considered a shotgun complaint or otherwise deficient despite its short and plain statement alleging the deprivation of his

2

rights under color of law, any such deficiency can be remedied through filing an Amended Complaint and does not require the extreme step of *sua sponte* dismissal.

   B.   Special Circumstances Exist that Make Abstention by This Court
        Unwarranted.

Magistrate Lammens contends that the Complaint should be dismissed under *Younger v. Harris*, 401 U.S. 31 (1971) because this Court should "refrain from enjoining pending state court proceedings except under special circumstances." (Doc. 5, p.4, quoting *Younger*). Special circumstances do, however, exist.

Magistrate Lammens quotes the *Younger* abstention doctrine, the third prong of which asks whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." (Doc. 5, p.4, quoting *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003). The entire basis of Plaintiff's Complaint is that there is absolutely no opportunity in the state proceedings to raise any challenges whatsoever, whether in terms of dismissal on speedy trial violations, denial of access to the courts, or modification of bond. Plaintiff has been and remains denied all access to the courts in South Carolina, which is the entire purpose of bringing a federal action, as stated in the Complaint.

Magistrate Lammens states that "what matters is whether Plaintiff is procedurally prevented from raising his constitutional claims in the state courts – not whether his claim would likely succeed on the merits in state court." (Doc. 5, p.5) This is precisely what is alleged throughout Plaintiff's Complaint. See Doc. 1, para. 1, 18, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 38, 39, 43, 44, 50, 52, and Prayer for Relief. Magistrate Lammens

argues that "Plaintiff does not claim he was procedurally barred from raising his constitutional claims in state court, but only claims that due to COVID-19 he has not been given access to the courts." (Doc. 5, p.5). It is difficult to imagine a more fundamental procedural bar to raising a claim than barring a claimant from entering court altogether. This is a clear violation of procedural due process under both the U.S. and Florida Constitutions; which was stated specifically in Plaintiff's Complaint. To say that Plaintiff's claim that he is denied access to the courts is not the same as claiming that he is procedurally barred from raising a claim in the courts is an artificial distinction.

The *Younger* abstention doctrine is, therefore, answered in the negative: there is no adequate opportunity in the state proceedings to raise constitutional challenges, and this Court should not abstain from enjoining pending state court proceedings.

Plaintiff respectfully requests that this Honorable Court jealously guard its jurisdiction on matters that implicate serious Liberty and Due Process concerns, such as the right to work and live in an entire county, or the right to take custody of one's own children. The Court should not rely on a generalization of the *Younger* abstention doctrine to summarily dismiss the Plaintiff's significant constitutional grievances.

"Circumstances fitting within the *Younger* doctrine, [the Supreme Court has] stressed, are 'exceptional'; they include . . . 'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (emphasis added).

In the case at bar, the Plaintiff raises constitutional challenges to being disallowed to modify bond conditions imposed upon the Plaintiff that banishes him from an entire county – his home county, no less – and abrogates his right to take custody of his own children. The bond conditions themselves are not a "state criminal prosecution," nor are they a civil enforcement proceeding, nor are they a civil proceeding uniquely in furtherance of the state court's ability to perform judicial functions.

The court should take careful note that the Supreme Court of the United States intentionally declined to add "matters arising from criminal proceedings" into its list of applicable exceptions under the *Younger* abstention doctrine, and instead it carefully chose the words "state criminal prosecutions." Furthermore, to the extent that the matters at issue can be categorized as "state criminal prosecution," the issue is not the prosecution of Plaintiff but rather the total *lack* of prosecution, the total *refusal* to prosecute or to allow the Plaintiff to raise any claim or defense whatsoever, to the great violation of Plaintiff's federal Constitutional rights. This does not fall under the *Younger* abstention doctrine.

This case presents none of the circumstances the Court has ranked as "exceptional"; therefore, the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Jacobs*, 571 U.S. 69 at 73 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, (1976)) (also quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)).

The shutdown of all civil courts in South Carolina on account of COVID-19 clearly creates special circumstances that warrant an injunction by this Court and negate the

*Younger* abstention doctrine. Even during the Civil War, the courts were not shut down to the extent that they are at the time of this action. In the case of *Ex Parte Milligan*, the Supreme Court ruled that an American citizen could not be tried before a military tribunal so long as the civil courts remained open and warned of the abuses that would follow were the Constitution suspended in time of crisis:

> That class of jurists and statesmen who hold that the trial by jury is lost to the citizen during the existence of war, must carry out their doctrine theoretically and practically to its ultimate consequences. The right of trial by jury being gone, all other rights are gone with it; therefore a man may be arrested without an accusation and kept in prison during the pleasure of his captors; his papers may be searched without a warrant; his property may be confiscated behind his back, and he has no earthly means of redress. Nay, an attempt to get a just remedy is construed as a new crime. He dare not even complain, for the right of free speech is gone with the rest of his rights. If you sanction that doctrine, what is to be the consequence?

71 U.S. 2 (1866).

The real-world Constitutional abuses resulting from the pandemic are equal to the hypothetical abuses pondered by the Supreme Court. As alleged in his Complaint, Plaintiff spent over eight months in jail on false charges that could have been tried a year ago had his speedy trial rights not have been violated. Even with Indianapolis under martial law, the civil courts were open to try Attorney Milligan during the Civil War. *Id.* at 105. The fact that Plaintiff would not have been denied access to the courts for a treason trial even in the bloodiest conflict in American history yet is denied access today on a domestic violence charge on account of a virus suggests that special circumstances exist that warrant an injunction from this Court, circumstances unprecedented in American history.

6

C.     Defendant Judge William A. McKinnon Is Not Immune from Suit Because

He Is Sued for an Injunction Regarding Non-Judicial, Administrative Acts.

Magistrate Lammens argues that "Plaintiff's claims . . . against Judge William A. McKinnon are barred by judicial immunity." (Doc. 5, p.5) Magistrate Lammens relies upon an unwarranted assumption in coming to this erroneous conclusion: "Although Plaintiff does not specifically name Judge McKinnon as the judge that is presiding over his proceedings, it appears he is seeking to challenge Judge McKinnon's decision to postpone his trial due to the COVID-19 pandemic."

As stated in Paragraph 13 of Plaintiff's Complaint, Judge McKinnon is "sued in his official capacity" not as the presiding judge in Plaintiff's criminal case, but as "head of the Sixteenth Judicial Circuit of South Carolina." This is an important distinction that removes the question of judicial acts from the calculus altogether.

"[A] judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles v. Waco,* 502 U.S. 9, 11–12, (citing to *Forrester v. White*, 484 U.S. 219, 227-229 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360 (1978)); *Duvall v. County of Kitsap,* 260 F.3d 1124, 1133 (9th Cir. 2001). In such a circumstance, "judicial immunity is overcome." *Pyle v. Hatley*, 239 F. Supp. 2d 970, 983 (C.D. Cal. 2002).

Here, Plaintiff does not complain of the actions of a presiding judge in his criminal case but rather complains of the unconstitutional restrictions on access to the courts implemented by the administrative head of a Judicial Circuit. Judicial actions in the course

of a trial may be entitled to absolute immunity, but administrative actions outside of the context of the trial are not. As noted by Professor Jeffrey Shaman:

> Administrative acts performed by a judge are not regarded as judicial in nature and, therefore, are not within the scope of judicial immunity. Even when essential to the functioning of a court, administrative acts performed by judges are not entitled to the cloak of immunity, because holding judges liable for such acts does not threaten judicial independence in the adjudicative process. That an administrative act is performed by a judge is irrelevant for purposes of immunity; it is the nature of the act in question, not the office of the person performing it, that makes it judicial or nonjudicial.

Jeffrey M. Shaman, Judicial Immunity from Civil and Criminal Liability, 27 San Diego L. Rev. 1, 10 (1990).

Moreover, even if, *arguendo*, Defendant McKinnon's actions were interpreted as judicial and not administrative, "judicial immunity does not bar injunctive relief against judges." *Id.* at 14. This is because "injunctions, being a form of equitable relief, may only be granted upon a showing that the plaintiff is suffering irreparable injury for which there is no adequate legal remedy." *Id.* Moreover, the judge is not subject to personal liability, meaning that injunctive relief "does not pose the same kind of risk to the judiciary as other forms of liability, and therefore, it is not necessary to use judicial immunity to interdict it." *Id.* at 14. Defendant McKinnon is not being sued for damages for judicial acts but for an injunction concerning administrative acts. But even if he were, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in [his] judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 542 (1984).

Despite all of this, even if Defendant McKinnon were ultimately immune, the Supreme Court has ruled that immunity is not "relevant to the existence of the Plaintiff's

cause of action" but is, rather, "a defense available to the official in question." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (referencing *Procuner v. Navarette*, 434 U. S. 562 (1978); *Pierson v. Ray*, 386 U. S. 556 (1967); Butz v. Economou, 438 U. S. 478 (1978). Immunity being a defense, "the burden of pleading it rests with the defendant," not with the Plaintiff, and not with the Magistrate Judge. *Gomez*, 446 U.S. at 640 (citing Fed. R. Civ. Pro. 8(c) (defendant must plead any "matter constituting an avoidance or affirmative defense"); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1271 (1969)). Respectfully, it is not for Magistrate Lammens but for Defendant McKinnon to raise the defense of immunity.

It would, therefore, be clear error to dismiss Plaintiff's Complaint on the grounds of judicial liability in regard to Defendant McKinnon.

> D:    A Potential Affirmative Defense by the State of South Carolina Does Not Warrant Dismissal of the Complaint.

Magistrate Lammens notes that Plaintiff's claims against the State of South Carolina are barred by the Eleventh Amendment." Plaintiff concedes this point and intends to file an Amended Complaint and to remove South Carolina as a Defendant.

Plaintiff submits that the removal of the State of South Carolina as a Defendant does warrant dismissal of the Complaint or the removal of any other Defendant. Plaintiff notes Magistrate Lammens' Report and Recommendation argued against the inclusion of only the State of South Carolina and Chief Administrative Judge McKinnon. No argument was made that would recommend removal of Governor McMaster, the York County Solicitor's Office, Solicitor Kevin Brackett, or Assistant Solicitor Jenny E. Desch.

E.      Venue is Proper under 28 U.S.C. § 1391(b).

Magistrate Lammens states that "it is unclear why this action was filed in the Middle District of Florida" and proceeds to cite 28 U.S.C. § 1391(b). Plaintiff, too, cited 28 U.S.C. § 1391(b) in Paragraph 8 of his Complaint, noting that "a substantial part of the events and omissions giving rise to the claim occurred in this district in that Plaintiff, as a resident of Florida, has been twice extradited from this District to the offending State of South Carolina and continues to suffer harm in this District, especially in regard to the conditions of Plaintiff's bond." (Doc. 1, para.8). Plaintiff further addressed this throughout the Complaint. See Doc. 1, para. 1, 5, 7, 9, 17, 20, 24, and 34. These paragraphs make it clear "why this action was filed in the Middle District of Florida."

Neither is this some insignificant issue. For a Florida citizen to be twice extradited to a foreign State on allegations of crimes that never even occurred is a colossal miscarriage of justice. To jail a Florida citizen in a foreign State for a total of over eight months on those false allegations without bond and without trial is unfathomable in modern America. Furthermore, while the journey from Central Florida to Northwest South Carolina is a mere ten-hour drive, the analysis would be the same if the State of Washington went rogue and twice extradited a Florida citizen on false charges to hold them across the country without bond. Florida has an interest in the violation of the rights of its citizens by foreign States, and Plaintiff's Complaint should not be dismissed because the Defendants do not reside in the State in which they have wreaked havoc on Plaintiff and his family.

### III.   CONCLUSION

Plaintiff is indisputably indigent. The issue is whether Plaintiff's Complaint is frivolous and should be dismissed *sua sponte*, along with Plaintiff's motion to proceed *in forma pauperis*.

The Magistrate's displeasure with the structure of Plaintiff's Complaint is not grounds to dismiss the same as a "shotgun complaint" when the Complaint complies with the pleading standards. Even assuming *arguendo* that the Complaint is actually defective for "fail[ing] to specify which facts are relevant to which causes of action," Doc. 5, p.4, the proper course of action would be to allow Plaintiff the opportunity to file an Amended Complaint remedying the alleged defect, not dismissal of the Complaint *in toto*.

Special circumstances exist that not only allow but require Plaintiff to file the present action in this Court, namely, that the Defendants have barred Plaintiff from any access to the courts whatsoever that he may challenge the constitutionality of the delay of his trial and his banishment from his own home and place of business.

Judicial Immunity does not bar suit against Defendant McKinnon, as he is sued in his capacity as administrative head of the Sixteenth Judicial Circuit, not as the judge presiding in Plaintiff's criminal matter. Neither would judicial immunity apply in any event, as Plaintiff sues for injunctive relief, not damages. Furthermore, if Defendant McKinnon were ultimately considered immune, it is his prerogative to assert that defense, not the Plaintiff's or the Magistrate's. Finally, even assuming *arguendo* that Judge McKinnon may ultimately be removed as a Defendant, it would not warrant a dismissal of the Complaint against the other Defendants.

Plaintiff intends to file an Amended Complaint and to remove the State of South Carolina as a Defendant. The Eleventh Amendment immunity of the State of South Carolina does not warrant a dismissal of the Complaint against the other Defendants or a removal of any other Defendant from this suit.

Venue is proper in this Court under 28 U.S.C. § 1391(b), as alleged in the Complaint. Plaintiff is a Florida citizen whose rights have been repeatedly violated in Florida by all Defendants, who intended that their actions have effect in this District, as alleged in the Complaint.

Wherefore Plaintiff respectfully objects to the Report and Recommendation of Magistrate Judge Lammens and prays that this Court may enter an Order granting Plaintiff's motion to proceed *in forma pauperis* and allowing this matter to proceed as scheduled.

CERTIFICATE OF SERVICE

I hereby certify that on 18 March 2021 I electronically filed the foregoing with the Clerk of the Court for the Middle District of Florida via the Electronic Filing System.

Dated: 18 March 2021                      Respectfully submitted,

/s/ Augustus Invictus_____
Augustus Invictus
424 E. Central Blvd. #156
Orlando, Florida 32801
Phone: 407.625.5636
Email: InvictusPA@protonmail.com